UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY A. DELAGARZA,

      Petitioner,

v.

THOMAS WINN,

      Respondent.

_____/

Case No. 19-12585

Stephanie Dawkins Davis
United States District Judge

## OPINION AND ORDER (1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) <u>DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*</u>

Anthony A. DelaGarza, ("Petitioner"), incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for second-degree murder, Mich. Comp. Laws § 750.317, and conspiracy to commit second-degree murder, Mich. Comp. Laws § 750.157a.

For the reasons that follow, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

## I.    BACKGROUND

Petitioner was originally charged with open murder, conspiracy to commit open murder, and lying to a police officer. Under Michigan law, it is proper to charge a defendant with the crime of open murder. Such a charge gives a circuit

1

court jurisdiction to try a defendant on first and second-degree murder charges. *See Taylor v. Withrow*, 288 F.3d 846, 849 (6th Cir. 2002); *see also Williams v. Jones*, 231 F. Supp.2d 586, 589 (E.D. Mich. 2002) (citing Mich. Comp. Laws § 750.316, 750.318; *People v. McKinney*, 65 Mich. App. 131, 135, 237 N.W.2d 215, 218 (1975)).

On August 4, 2014, petitioner pleaded guilty in the Ottawa County Circuit Court. The prosecutor placed on the record that petitioner would be pleading guilty to second-degree murder on the open murder count, thereby avoiding the possibility of a first-degree murder conviction after trial. The prosecutor also indicated that petitioner would be pleading guilty to the conspiracy to commit first-degree murder count but he would be sentenced under the same sentencing guidelines range as the one scored for the second-degree murder charge. The prosecutor agreed to drop the lying to police officers charge. The prosecutor also indicated that there was no sentencing agreement between the parties. The plea agreement called for petitioner to cooperate with the authorities with respect to the cases involving the co-defendants in the murder case in which he was charged. The prosecutor indicated that if petitioner failed to cooperate, the original open murder charge which would permit a first-degree murder conviction after a trial would be reinstated. (ECF No. 9-4, PageID.134-37). Defense counsel acknowledged this was the entire agreement. (*Id.* at PageID.137).

Petitioner was advised by the judge that he was pleading guilty to second-degree murder and "conspiracy to commit homicide, open murder."  Petitioner was advised of the trial rights that he was waiving by pleading guilty, including his right to claim that the plea was the result of any promises not placed on the record. Petitioner acknowledged that he was relinquishing these rights by pleading guilty. (ECF No. 9-4, PageID.138-39).

Petitioner made out a factual basis to the crime by admitting that he murdered Jose Patricio Hernandez by hitting him upside the head with a ball joint remover tool.  Petitioner said he murdered Hernandez after discussions with co-defendant Maryann Castorena "to go with her that night and kill Patricio." Although petitioner denied intending to kill Mr. Hernandez, he admitted that he intended to assault him.  During this assault, Mr. Hernandez was hit in the head and died as a result.  Petitioner admitted that he assaulted Mr. Hernandez after Ms. Castorena requested that petitioner murder the victim.  Petitioner said that Ms. Castorena planned to get some money as a result of the murder and planned on sharing the money with petitioner.  (ECF No. 9-4, PageID.139-41).  Petitioner admitted to reading the written plea agreement entered into between the parties, which had been placed on the record, and acknowledged that this was the entire plea agreement.  Petitioner indicated that other than the plea agreement, there were no other promises made to get him to plead guilty.  (*Id.* at PageID.141-42).

Petitioner was sentenced to concurrent sentences of twenty to forty years on the second-degree murder and conspiracy to commit second-degree murder convictions.  (ECF No. 9-5, PageID.156).  Petitioner subsequently moved to withdraw his guilty plea in the trial court.  On August 28, 2015, the Court conducted an evidentiary hearing on petitioner's claim.

Petitioner testified that he did not commit the offense and was told by trial counsel what to say at the plea hearing.  Petitioner claimed that trial counsel erroneously told him that people saw petitioner at the scene of the crime, a video showed petitioner getting into the car with the co-defendant, that the victim's blood was found on the clothing that petitioner gave to the police, that the Global Positioning System (G.P.S.) on petitioner's phone placed him at the scene, and that petitioner's DNA was in the car driven by the co-defendant.  Petitioner also claimed that his attorney told him that he was looking at a sentence of 7 ½ to 12 years if he cooperated with the prosecution and the conspiracy conviction would not have an effect on his sentencing guidelines.  (ECF No. 9-8, PageID.181-189, 242).  Although petitioner admitted that the written plea agreement contained no sentencing agreement, petitioner claimed that he did not have a chance to read the written agreement, although he admitted to signing it.  (*Id.* at PageID.197-199).  Although petitioner conceded that he stated that there was no sentencing agreement at the time of the plea, he claimed that there was an off-the-record agreement.  (*Id.*

at PageID.200-201).  Petitioner further stated that he only made certain statements at the plea hearing after his attorney told him what to say, including his statement that there had been no off the record promises.  (*Id.* at PageID.202-204).

Petitioner's trial attorney John Moritz testified.  Moritz denied telling petitioner that his DNA was found in the car, that the victim's blood was found on his clothing, or that the G.P.S. placed petitioner at the scene of the crime.  Counsel advised petitioner to plead guilty based on the significant circumstantial evidence which implicated him in the murder, including a statement from his co-conspirator, a "murder note" that had petitioner's fingerprint on it, a statement from petitioner's brother indicating that petitioner wanted a gun and was going to commit a crime, an attempted false alibi, and a jailhouse confession that contained details of the crime not known to the general public.  Counsel also explained that he never told petitioner that he would receive 7½ to 12 years in prison.  Counsel said that he merely discussed the guidelines with his client and never discussed a specific sentence.  (ECF 9-8, PageID.267-76).

After holding an evidentiary hearing, the trial court denied the motion to withdraw the plea.  The judge found defense counsel's testimony to be "clear, direct, unequivocal and confident."  The judge found petitioner's testimony at the hearing to be "inconsistent, illogical, and in contradiction of his repeated prior sworn testimony to the contrary."  (ECF No. 9-8, PageID.312-13).  The judge ruled

that he did not find petitioner's testimony to be "factually accurate" or "that the statements he claims his lawyer made were, in fact, made." (*Id.* at PageID.313). The judge found that petitioner had not been denied the effective assistance of counsel.

Petitioner filed a motion for reconsideration, which raised a new argument claiming that his plea should be vacated because the crime that formed the basis for one of his convictions, conspiracy to commit second-degree murder, is a non-existent offense. After ordering briefing on the claim, the judge denied the motion. *People v. DelaGarza*, No. 14-38444-FC (Ottawa Cty. Cir. Ct., Dec. 23, 2015) (ECF No. 9-11, PageID.320). Petitioner's conviction was affirmed on appeal. *People v. DelaGarza,* No. 329372 (Mich. Ct. App. Nov. 18, 2015) (Jansen, J., would grant leave to appeal); *lv. den.* 499 Mich. 956, 880 N.W.2d 227 (2016) (Markham, J., joined by Viviano and Bernstein, JJ., dissenting); *reconsideration den.* 500 Mich. 870, 885 N.W.2d 245 (2016).

Petitioner filed a post-conviction motion for relief from judgment which was denied. *People v. DelaGarza,* No. 14-38444-FC (Ottawa Cty. Cir. Ct., Jan. 25, 2017) (ECF No. 9-13, PageID.356-62). The Michigan appellate courts denied petitioner leave to appeal. *People v. Delagarza*, No. 338391 (Mich. Ct. App. Oct. 27, 2017); *lv den.* 503 Mich. 872, 917 N.W.2d 640 (2018).

Petitioner seeks a writ of habeas corpus on the following grounds:

6

I.    The trial court abused its discretion when it denied the motion to withdraw the plea when trial counsel performed ineffectively.

II.    Defendant-appellant should be allowed to withdraw his plea to a non-existent offense, conspiracy to commit second-degree murder.

III.    Whether defendant's plea to a non-existent crime was knowingly and voluntarily made where it was illusory and based on ignorance, misinformation, misrepresentation, incomprehension and false premise.

IV.    Defendant's conviction requires remand for resentencing where the trial court engaged in impermissible judicial fact finding.

## II.   STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

A decision of a state court is "contrary to" clearly established federal law if
the state court arrives at a conclusion opposite to that reached by the Supreme
Court on a question of law or if the state court decides a case differently than the
Supreme Court has on a set of materially indistinguishable facts. *Williams v.
Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when
"a state court decision unreasonably applies the law of [the Supreme Court] to the
facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the
writ simply because that court concludes in its independent judgment that the
relevant state-court decision applied clearly established federal law erroneously or
incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks
merit precludes federal habeas relief so long as 'fairminded jurists could disagree'
on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.
86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III. DISCUSSION

A. <u>Claims # 1, 2, and 3. The involuntary plea claim/ineffective assistance
of counsel claims</u>.

Petitioner first claims that he should have been permitted to withdraw his
guilty plea because it was not knowingly or intelligently made. Petitioner also

claims that his plea was involuntary because his trial counsel was ineffective in that he gave petitioner misleading information about the sentence he would receive by pleading guilty and also gave petitioner false information about the evidence against petitioner.  Petitioner also argues his plea should be set aside because the crime of conspiracy to commit second-degree murder is a non-existent offense under Michigan law, thereby rendering the plea illusory.

Petitioner has no federal constitutional right to withdraw his guilty plea.  *See Hynes v. Birkett*, 526 Fed. Appx. 515, 521 (6th Cir. 2013).  Unless a petitioner's guilty plea otherwise violated a clearly established constitutional right, whether to allow the withdrawal of a habeas petitioner's guilty plea is discretionary with the state trial court.  *See Shanks v. Wolfenbarger*, 387 F.Supp.2d 740, 748 (E.D. Mich. 2005).

A guilty plea that is entered in state court must be voluntarily and intelligently made.  *See Shanks*, 387 F.Supp.2d at 749; *Doyle v. Scutt*, 347 F.Supp. 2d 474, 482 (E.D. Mich. 2004) (both citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)).  In order for a plea of guilty to be voluntarily and intelligently made, the defendant must be aware of the "relevant circumstances and likely consequences" of his plea.  *Hart v. Marion Correctional Institution*, 927 F.2d 256, 257 (6th Cir. 1991).  The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty.  *King v. Dutton*, 17 F.3d

151, 154 (6th Cir. 1994).  When a petitioner brings a federal habeas petition

challenging his plea of guilty, the state generally satisfies its burden by producing a

transcript of the state court proceedings showing that the plea was made

voluntarily.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).  The factual

findings of a state court that the guilty plea was properly made are generally

accorded a presumption of correctness.  Petitioner must overcome a heavy burden

if the federal court is to overturn these findings by the state court.  *Id.*

"[A] plea of guilty entered by one fully aware of the direct consequences,

including the actual value of any commitments made to him by the court,

prosecutor, or his own counsel, must stand unless induced by threats (or promises

to discontinue improper harassment), misrepresentation (including unfulfilled or

unfulfillable promises), or perhaps by promises that are by their nature improper as

having no proper relationship to the prosecutor's business (e.g. bribes)."  *Brady v.

United States*, 397 U.S. 742, 755 (1970) (internal citation omitted).  A plea is

voluntary if it is not induced by threats or misrepresentations and the defendant is

made aware of the direct consequences of the plea.  *Id*.  The voluntariness of a plea

"can be determined only by considering all of the relevant circumstances

surrounding it."  *Id*. at 749.

Petitioner's plea of guilty was voluntary.  Petitioner was advised of the

maximum penalty for second-degree murder and the conspiracy charge.  The terms

of the plea agreement were placed on the record. Petitioner acknowledged that these were the complete terms of the agreement. Petitioner was advised of the rights to a trial that he would relinquish by pleading guilty. Petitioner acknowledged that he was waiving these rights by pleading guilty. Petitioner denied that any threats or promises that had not already been disclosed on the record had been made to induce his plea.

To the extent that petitioner claims that his trial counsel misled him into believing that he would be sentenced to 7 ½ to 12 years in prison, the state court's proper plea colloquy cured any misunderstandings that petitioner may have had about the consequences of the plea. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). As mentioned above, the terms of the plea agreement were placed on the record. The parties acknowledged on the record that there had been no additional promises, other than the terms mentioned in the plea agreement, to get petitioner to plead guilty. Petitioner was not denied the effective assistance of counsel due to his counsel's alleged promise that he would be sentenced to 7 ½ to 12 years in prison, where the plea agreement contained no such promise and petitioner stated at the plea hearing that he understood the terms of the plea agreement that he had entered into with the trial court and the consequences of his plea. *See Sellers v. U.S.,* 316 F. Supp. 2d 516, 521 (E.D. Mich. 2004); *see also Bridinger v. Berghuis,* 429 F. Supp. 2d 903, 910-11 (E.D. Mich. 2006). Moreover, petitioner is not

entitled to relief on his claim because he is unable to show that but for counsel's allegedly false promise that he would be sentenced to 7 ½ to 12 years in prison, he would not have pleaded guilty, because there is no reasonable probability that he could have prevailed had his case gone to trial or that he would have received a lesser sentence, given the compelling evidence against him in this case and the lack of any viable defense. *See Thirkield v. Pitcher*, 199 F.Supp.2d 637, 655-56 (E.D. Mich. 2002).

Petitioner is bound by the statements he made at the plea hearing. *Ramos*, 170 F.3d at 566. Other than Petitioner's own statement, there is no evidence of promises made by trial counsel in this case. The fact that petitioner was subsequently dissatisfied with his plea or may have hoped for more lenient treatment does not render his plea unknowing or involuntary. *Brady*, 397 U.S. at 757.

Petitioner also claims that his plea should be set aside because his trial counsel was ineffective in that he misstated the strength of the case against petitioner. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466

U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

The Supreme Court has noted that:

> Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as

> stories change, witnesses become unavailable, and new
> suspects are identified.

*Premo v. Moore,* 562 U.S. 115, 124-25 (2011).  The Supreme Court further

admonished:

> These considerations make strict adherence to the
> *Strickland* standard all the more essential when reviewing
> the choices an attorney made at the plea bargain stage.
> Failure to respect the latitude *Strickland* requires can
> create at least two problems in the plea context.  First, the
> potential for the distortions and imbalance that can inhere
> in a hindsight perspective may become all too real.  The
> art of negotiation is at least as nuanced as the art of trial
> advocacy and it presents questions farther removed from
> immediate judicial supervision.  There are, moreover,
> special difficulties in evaluating the basis for counsel's
> judgment: An attorney often has insights borne of past
> dealings with the same prosecutor or court, and the
> record at the pretrial stage is never as full as it is after a
> trial.  In determining how searching and exacting their
> review must be, habeas courts must respect their limited
> role in determining whether there was manifest
> deficiency in light of information then available to
> counsel.  AEDPA compounds the imperative of judicial
> caution.
>
> Second, ineffective-assistance claims that lack necessary
> foundation may bring instability to the very process the
> inquiry seeks to protect.  *Strickland* allows a defendant
> "to escape rules of waiver and forfeiture[.]"  Prosecutors
> must have assurance that a plea will not be undone years
> later because of infidelity to the requirements of AEDPA
> and the teachings of *Strickland*.  The prospect that a plea
> deal will afterwards be unraveled when a court second-
> guesses counsel's decisions while failing to accord the
> latitude *Strickland* mandates or disregarding the structure

> dictated by AEDPA could lead prosecutors to forgo plea
> bargains that would benefit defendants, a result favorable
> to no one.

*Premo*, 562 U.S. at 125 (internal citations and quotations omitted).

Moreover, in order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty, but would have insisted on going to trial.  *Premo*, 562 U.S. at 129 (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).  An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.  The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty.  *See Maples v. Stegall*, 340 F.3d 433, 440 (6th Cir. 2003).  The petitioner must therefore show a reasonable probability that but for counsel's errors, he would not have pleaded guilty, because there would have been a reasonable chance that he would have been acquitted had he insisted on going to trial.  *See Garrison v. Elo*, 156 F.Supp.2d 815, 829 (E.D. Mich. 2001).  The test of whether a defendant would have not pleaded guilty if he received different advice from counsel "is objective, not subjective; and thus, 'to

obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. U.S.*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

Petitioner is not entitled to relief on his claim for several reasons. First, the judge conducted an evidentiary hearing on petitioner's claim in the state court. Petitioner's trial attorney denied telling petitioner that his DNA was found in the car, that the victim's blood was found on his clothing, or that the G.P.S. placed him at the crime scene. Counsel testified that he advised petitioner to plead guilty based on the significant circumstantial evidence which implicated petitioner in the murder, including a statement from his co-conspirator, a "murder note" that had petitioner's fingerprint on it, a statement from petitioner's brother indicating that petitioner wanted a gun and was going to commit a crime, an attempted false alibi, and a jailhouse confession that contained details of the crime not known to the general public.

The judge chose to believe counsel's testimony, finding it to be "clear, direct, unequivocal and confident." The judge found petitioner's testimony at the hearing to be "inconsistent, illogical, and in contradiction of his repeated prior sworn testimony to the contrary." (ECF No. 9-8, PageID.312-13).

While the ultimate question of ineffective assistance of counsel is a mixed question of law and fact, the factual findings of state courts underlying such an analysis are accorded the presumption of correctness in federal habeas proceedings. *See Abdur'Rahman v. Bell*, 226 F.3d 696, 702 (6th Cir. 2000). This is particularly so where credibility determinations are involved. *See e.g.*, *Mix v. Robinson*, 64 Fed. Appx. 952, 956 (6th Cir. 2003). The presumption of correctness also "also applies to those implicit findings of fact that are inherent in [a state court's] resolution of conflicting evidence." *McPherson v. Woods*, 506 Fed. Appx. 379, 387 (6th Cir. 2012). In order to overturn this presumption of correctness, a habeas petitioner must either show that the record as a whole did not support the factual determination or must prove by clear and convincing evidence that the factual determination was erroneous. *See Poole v. Perini*, 659 F.2d 730, 736 (6th Cir. 1981). In order to reject petitioner's ineffective assistance of counsel claim, the state trial judge chose to credit trial counsel's testimony that he had not given petitioner false information about the evidence against him but had advised petitioner to plead guilty based on the strong circumstantial evidence implicating petitioner in the murder. Petitioner presented no evidence to this Court to rebut the trial judge's factual finding that trial counsel had not given petitioner false advice concerning the evidence against him and had provided petitioner with the effective assistance of counsel. This Court is bound by that determination.

Secondly, petitioner has not shown a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty. *See Shanks v. Wolfenbarger*, 387 F.Supp.2d at 750. Petitioner failed to put forth any viable defenses that he had for the original first-degree murder and conspiracy to commit first-degree murder charges. Defense counsel negotiated a plea agreement, wherein the prosecutor agreed to dismiss the original first-degree murder charge and permit petitioner to plead guilty to second-degree murder. Under Michigan law, a conviction for first-degree murder requires a non-parolable life sentence, whereas a conviction of second-degree murder is parolable. *See Perkins v. LeCureux*, 58 F.3d 214, 216 (6th Cir. 1995). Hence, the plea agreement allowed petitioner to avoid a mandatory sentence of life in prison without parole. The original conspiracy to commit first-degree murder charge carried a mandatory parolable life sentence. Under Michigan law, a sentence of life imprisonment is mandatory for conspiracy to commit first-degree murder, although the sentence is parolable. *See Robinson v. Stegall*, 157 F.Supp.2d 802, 824 (E.D. Mich. 2001) (internal citations omitted). The reduction of this charge to conspiracy to commit second-degree murder also permitted petitioner to avoid a life sentence. Trial counsel's advice to plead guilty to the second-degree murder and conspiracy to commit second-degree murder

charges was a reasonable strategy.  *See Bonior v. Conerly*, 416 Fed. Appx. 475, 479 (6th Cir. 2010).

In addition, the favorable plea bargain that petitioner received weighs against a finding that counsel was ineffective for advising a guilty plea.  *See Plumaj v. Booker*, 629 Fed. Appx. 662, 667 (6th Cir. 2015) (citing *Pilla*, 668 F.3d at 373; *Haddad v. United States*, 486 Fed. Appx. 517, 522 (6th Cir. 2012)). Indeed, "the Supreme Court has never held that the benefits of a plea agreement alone cannot suffice to answer the prejudice inquiry, namely whether 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *Id*. (quoting *Hill v. Lockhart*, 474 U.S. at 59).  Other courts have reached the same result.  *See Pidgeon v. Smith*, 785 F.3d 1165, 1173 (7th Cir. 2015) ("The terms of a plea deal are admittedly relevant in assessing the credibility of a petitioner's claim that he would have gone to trial had he received correct information at the plea-bargaining stage").  In light of the favorable plea bargain received in this case, petitioner is unable to show that he was prejudiced by counsel's advice to plead guilty.  Finally, petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim, because any suggestion that he has a defense to these charges is "unpersuasive and lack[s] merit." *Holtgrieve v. Curtis*, 174 F.Supp.2d 572, 587 (E.D. Mich. 2001).

Petitioner further contends that his plea was illusory because he pleaded guilty to conspiracy to commit second-degree murder, a non-existent offense under Michigan law.  Petitioner is correct that there is no lesser included offense of conspiracy to commit second degree murder in Michigan.  *See People v. Hamp*, 110 Mich. App. 92, 103 (1981); *see also People v. Hammond*, 187 Mich. App. 105, 108-109 (1991).  However, petitioner was permitted to plead guilty to the crime of conspiracy to commit second-degree murder as part of a negotiated plea, whereby he avoided a non-parolable life sentence if convicted of first-degree murder and a mandatory parolable life sentence if convicted of conspiracy to commit first-degree murder.  "Where a defendant pleads guilty to such a crime as part of a negotiated compromise, thereby gaining the benefit of a lesser sentence, there is no constitutional infirmity."  *Torres v. McGrath*, 407 F. Supp. 2d 551, 561 (S.D.N.Y. 2006); *see also Carter v. Neal*, 910 F.Supp. 143, 148 (D. Del. 1995); *accord United States v. Fowler*, 104 F.3d 368, 1996 WL 734637, at *5 (10th Cir. 1996) (summ. order) (collecting cases).  Here, petitioner gained the benefit of a lesser sentence and is, thus, not entitled to habeas relief on his claim that he pleaded guilty to a non-existent offense.

In addition, petitioner's plea was not illusory even though he pleaded guilty to a non-existent offense because he received substantial benefits from the plea.  A plea agreement is entered into involuntarily and unknowingly if the defendant is

unaware that the prosecution's promise is illusory. *See United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000). Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a guilty plea have been found to constitute coercion justifying the withdrawal of a guilty plea. *See Spearman v. United States*, 860 F. Supp. 1234, 1249 (E.D. Mich. 1994).

Petitioner's plea agreement was not illusory. The prosecutor agreed to dismiss the original first-degree murder charge, which carried a mandatory non-parolable life sentence. The prosecutor also agreed to treat the conspiracy to commit first-degree murder charge as a conspiracy to commit second-degree murder charge, so that petitioner could avoid a mandatory parolable life sentence. This Court concludes that the plea agreement was not illusory because petitioner was promised the dismissal of charges which amounted to a real, tangible benefit in consideration for the plea. *See Daniels v. Overton*, 845 F.Supp. 1170, 1174 (E.D. Mich. 1994). Because petitioner derived a real benefit from his plea bargain in this case, his plea was not illusory and he is not entitled to habeas relief. *See McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004).

D.    Claim # 4. The sentencing claim.

Petitioner alleges that the trial judge violated his Sixth Amendment right to trial by jury by using factors that had not been proven beyond a reasonable doubt or admitted to by petitioner in scoring several offense variables under the Michigan

21

Sentencing Guidelines.  Any independent claim that the state trial court incorrectly scored or calculated petitioner's sentencing guidelines range under the Michigan Sentencing Guidelines is non-cognizable on federal habeas review, because it is basically a state law claim.  *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007); *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003).  Errors in the application of state sentencing guidelines cannot independently support habeas relief.  *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016).  Petitioner, however, argues that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by petitioner when scoring these guidelines variables.

On June 17, 2013, the United States Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt.  *See Alleyne v. United States*, 570 U.S. 99, 103 (2013).  *Alleyne* expands the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.  In reaching this conclusion, the

Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), which held

that only factors that increase the maximum, as opposed to the minimum, sentence

must be proven beyond a reasonable doubt to a factfinder.  *Alleyne*, 570 U.S. at

106-07.  However, the Supreme Court indicated that the ruling in *Alleyne* did not

mean that every fact influencing judicial discretion in sentencing must be proven to

a jury beyond a reasonable doubt.  *Id.* at 116.

The Michigan Supreme Court relied on *Alleyne* to hold that Michigan's

mandatory sentencing guidelines scheme violates the Sixth Amendment right to a

jury trial.  *See People v. Lockridge*, 498 Mich. 358 (2015).  The Michigan Supreme

Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme

violated the Sixth Amendment, because the "guidelines *require* judicial fact-

finding beyond facts admitted by the defendant or found by the jury to score

offense variables that *mandatorily* increase the floor of the guidelines minimum

sentence range, i.e., the 'mandatory minimum' sentence under *Alleyne*."

*Lockridge*, 498 Mich. at 364 (emphasis in original).  The Michigan Supreme

Court's remedy for the unconstitutionality of the Michigan guidelines was to sever

and strike the mandatory component of the guidelines and make the guidelines

advisory only.  *Id.* 498 Mich. at 391-92 (relying on *Booker*, 543 U.S. at 264-265

(holding that the remedy for the unconstitutionality of the mandatory federal

sentencing guidelines was to sever only the mandatory component, still requiring

courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

The Sixth Circuit later granted habeas relief on a challenge to Michigan's sentencing guidelines, holding that the United States Supreme Court's decision in *Alleyne* clearly established that Michigan's *mandatory* minimum sentencing scheme was unconstitutional.  *Robinson v. Woods*, 901 F.3d 710, 716-18 (6th. Cir. 2018); *cert. den.*  139 S. Ct. 1264 (2019).  In so ruling, the Sixth Circuit concluded that "[a]t bottom, Michigan's sentencing regime violated *Alleyne's* prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

Petitioner is not entitled to relief on his claim for two reasons.  First, petitioner raised this claim in his post-conviction motion for relief from judgment. Although the judge did not explicitly address this claim in the order denying the motion for relief from judgment, the judge implicitly rejected this claim when denying petitioner post-conviction relief.  The remedy under *Lockridge* is a remand for the trial court judge to determine if he or she would impose the same sentence even without the guidelines.  *Lockridge*, 498 Mich. at 397.  This remedy is based on the procedure adopted by the Second Circuit in *United States v. Crosby*, 397 F.3d 103, 117-118 (2nd Cir. 2005).  *See Lockridge*, 498 Mich. at 395-396.  The judge's implicit rejection of petitioner's *Lockridge* claim strongly suggests that the

24

court would have imposed the same sentence on petitioner even in the absence of the mandatory guidelines.  Petitioner's *Lockridge* claim is moot.  *See Hill v. Sheets,* 409 Fed. Appx. 821, 824-25 (6th Cir. 2010) (The Michigan Supreme Court's decision to vacate petitioner's life sentence and order his re-sentencing in conformance with the United States Supreme Court's holdings in *Miller v. Alabama* and *Montgomery v. Louisiana* moots petitioner's sentencing claims).

Moreover, assuming the claim is not moot, there was no Sixth Amendment violation because petitioner at his guilty plea admitted to the facts that provided a basis for scoring these sentencing guidelines.  Petitioner alleges that the following scores were improperly based upon judicial factfinding: 10 points under Offense Variable (OV) 1, Mich. Comp. Laws § 777.31(1)(d) ("[t]he victim was touched by any other type of weapon"); 1 point under OV 2, § 777.32(1)(3) ("[t]he offender possessed or used any other potentially lethal weapon"); 25 points under OV 3, § 777.33(1)(c) ("[l]ife threatening or permanent incapacitating injury occurred to a victim"); and 50 points under OV 6, § 777.36(1)(a)("[t]he offender had premeditated intent to kill . . .").  *See* ECF No. 1, PageID.37.

Petitioner admitted at the plea hearing that he struck the victim on the head with a joint remover tool.  This qualifies as a potentially lethal weapon, particularly when used to strike someone in a critical body part.  Petitioner's admission sufficiently supported the 10-point score under OV 1 and the 1-point score under

OV 2. Petitioner admitted that the victim died as a result of the attack, satisfying OV 3's requirement that a life-threatening injury occurred. Petitioner admitted that he spoke with his co-conspirator, Maryann Castorena, about the attack beforehand, informing the judge that Castorena requested that he murder the victim and that she would pay him to do it. Petitioner's further admission that the plan was to murder the victim and that he would be paid for that result satisfies OV 6, showing that he had a premeditated intent to kill.

Under *Apprendi*, a judge may impose any sentence authorized "on the basis of the facts ... admitted by the defendant." *Hurst v. Fla.*, 136 S. Ct. 616, 618 (2016) (quoting *Blakely,* 542 U.S. at 303). The Sixth Circuit has noted that "*Alleyne's* restriction on judge-found facts simply does not apply where the defendant has admitted those facts." *United States v. Roberts*, 590 Fed. Appx. 487, 490 (6th Cir. 2014). Petitioner admitted to all of the facts necessary to support the scoring of these guidelines variables. He is not entitled to relief on his fourth claim.

## IV.   CONCLUSION

The Court denies the petition for a writ of habeas corpus. The Court denies petitioner a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the

applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, petitioner is denied a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong.  *Johnson v. Smith*, 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).  Petitioner is denied leave to appeal *in forma pauperis*, because the appeal would be frivolous.  *See* Fed. R. App. P. 24(a).

## V.   ORDER

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

27

**IT IS SO ORDERED**.

Dated:  November 30, 2021                          s/Stephanie Dawkins Davis
                                                   Stephanie Dawkins Davis
                                                   United States District Judge